ADAMS *against* The DELAWARE INSURANCE COMPANY.

*Philadelphia,*
*Saturday,*
January 5, 1811.

THIS cause was argued upon a statement of facts, which in substance were these:

The plaintiff, on the 15th *April* 1806, caused insurance to be effected by the defendants upon goods by the schooner *Hazard*, at and from *Philadelphia* to *St. Jago de Cuba*, and at and from thence to *Philadelphia;* 7000 dollars at eight per cent. The schooner, having the plaintiff's goods on board to the amount insured, was taken in the prosecution of her voyage outward, on the 10th of *May*, by two *French* armed vessels, who took out part of her crew, replaced them with a prizemaster and men, and carried her to *Samana*, a small island near the east side of *St. Domingo*, where she arrived on the 21st of *May*. On her arrival, proceedings were instituted against her in the tribunal *de première instance* at *Santo Domingo*, to which place the captain went, leaving his mate, a cook, and boy on board the schooner, the hatches of which were sealed by the *French* commissary, and her sails unbent, and put below. On the 6th of *June* the schooner and cargo were acquitted. The captors appealed; and on the 10th of *June* the sentence of acquittal was affirmed in the tribunal of *the last instance*, and the property ordered to be restored. The captain returned as soon as possible to *Samana*, carrying with him the decree of acquittal, and the order of restitution. He arrived on board his vessel about 9 o'clock on *Saturday* evening the 21st of *June*, and being fatigued, immediately retired to rest. The next morning, being *Sunday*, the *French* officer, on the exhibition of the

An abandonment after acquittal, and after an order of restitution has been given by the court of last resort to the agent of the assured, is too late, notwithstanding it be made before actual restitution by the captors.

It is the state of the *fact*, and not the state of the party's *information* at the time of an abandonment, that is to test its validity.

1811.

ADAMS
*v.*
DELAWARE
INS. CO.

order of acquittal and restitution, took off the seals from the hatches, redelivered to the captain possession of the vessel, which till that time he had retained as before mentioned, and the captain immediately prepared for his departure. On the 25th of *June* he sailed from *Samana*, and arrived in safety at *St. Jago*.

On the 21st of *June*, the insured having on that day received from the captain a letter of 22d *May*, informing of his capture and arrival at *Samana*, communicated it to the defendants, and tendered an abandonment, before nine o'clock in the evening.

The question for the opinion of the court, was whether the plaintiff was intitled to recover for a total loss, or only for a partial loss.

*Levy* for the plaintiff. The point has been many times decided, that while the owner is kept out of the possession and control of his property by the captors, their agents, or government, he is intitled to abandon, provided he does it within a reasonable time. It is this circumstance, the having lost his power over the property insured, that intitles him to substitute the insurer in his place. Hence as between insurer and insured there is a total loss, although the property is never condemned or carried *infra præsidia*. *Goss* v. *Withers*. (a) Hence he is not obliged to wait the event of capture. 2 *Marsh.* 510. At any time during the detention he may make his election. 2 *Marsh.* 563. And whether the detention be by friends or enemies, 2 *Marsh.* 511., by hostile capture, or by embargo, 2 *Marsh* 508., this privation of the control of his property, is a total loss within the policy, if he elects so to consider it. By the law of *France* indeed, the ship being once captured, it is always a total loss; and the legal effect as to abandonment continues, though the ship be released or retaken. 2 *Emerig.* 188. From these principles it results, that whatever be the futility of the pretence under which the capture or detention takes place, or however clear and immediate the prospect of restoration, still if the owner has not possession and control at the time of abandonment, that act is valid. The case of *Dutilh* v. *Gatliff* (b)

(a) 2 *Burr.* 694.　　　　(b) 4 *Dall.* 446.

is in point. The vessel there was carried into *Nassau*, libelled as prize, and on the 9th of *November* acquitted. The abandonment was made four days afterwards, when she was still in the custody of the captors, and in five days after that she was delivered over to the claimant. By what argument could this court sustain the abandonment in that case, and not do it here? The actual, involuntary custody of the captor, existed at the time of abandonment here as well as there, and this was the governing circumstance. We are therefore intitled to a total loss.

. But there is another fact. The plaintiff had no notice of the restoration at the time of the abandonment; and there are respectable authorities to shew, that under such circumstances the abandonment is valid. It was precisely the point decided by the Supreme Court of *New York* in *Murray* v. *The United Insurance Company*, (a) where the vessel was released on the 18th of *June*, and the abandonment was made on the 3d of *August;* and there is something in the nature of the contract, and something also in one of the stipulations of the insurer, which strongly countenances this opinion. The assured is bound to make his abandonment in a reasonable time, or he loses his right. His obligation to abandon depends upon the intelligence he has received; his right therefore would seem to depend upon the same thing. He can act only upon what he knows; and where a capture as prize has actually taken place, giving him a right to abandon, if he exercises it while it appears to continue, a restitution should be considered as for the account of the insurer. But the insurer positively agrees to pay within thirty days after proof of loss. In case of capture as prize, the loss may be proved without difficulty; and although at the time of abandonment the restitution be made, still if there is no knowledge of it until thirty days thereafter, the stipulation binds the underwriter to pay. It seems to amount to an agreement to take the state of the party's information as the rule, where there has actually been a technical total loss, of which proof can be made.

(a) 2 *Johns. Cases* 263.

1811.

ADAMS
v.
DELAWARE
INS. CO.

*Condy* and *Rawle* for the defendants. The point is a very short one, whether after an order of restitution by the court of *last resort*, the assured may abandon. If the effect of an acquittal can be defeated by an appeal, as in the case of an acquittal by a subordinate tribunal, if any legal arrangement may supervene, before actual restoration, to continue the custody of the captor against the will of the captured, there may be good reason for arguing that the abandonment is in time. That was the case in *Dutilh* v. *Gatliff*, where the acquittal was in the vice-admiralty of *New Providence*, and the captors might at any time have entered an appeal to *England*, until actual redelivery. It does not appear indeed, that in that case there was a writ of restitution. But in the present instance, the acquittal and order of restitution were by the court of last resort, whose decree could not be impugned. The vessel in point of law was therefore restored. The custody of the captors was only until demand could be made by the captured. It was not against the will of the latter. The property was under his control, the instant he could claim to exercise authority over it, and what is this but restitution? The delay was attributable to the captain, not the captor. It lies upon the plaintiff to shew, that at least there was danger that the custody of the captors would continue notwithstanding the decree and order, as by a reconsideration of the sentence, or the like; for otherwise the court must presume there was none. The very case has been decided in *Marshall* v. *The Delaware Insurance Company*, (a) where the actual restoration of the vessel was made on the same day with the abandonment, but the restitution was ordered before.

The same case decides that the loss must continue total to the time of the abandonment, in order to justify it, and that the state of the party's information is not of the least importance. It was likewise so decided in *Rhinelander* v. *The Insurance Company of Pennsylvania* (b), in *Bainbridge* v. *Nelson* (c), and in the case of *Church* v. *Bedient* (d), in the *New York* court of errors, in direct opposition to the case

(a) 4 *Cranch* 202.          (c) 10 *East* 329.
(b) 4 *Cranch* 46.           (d) 1 *Caines' Cases* 21.

of *Murray* v. *The United Insurance Company*, which was decided in the Supreme Court three years before. It has the sanction of the great name of lord *Mansfield*, who was so desirous of preventing the contract of insurance from being more than an indemnity, that he doubted in *Hamilton* v. *Mendez*, (a) whether the loss should not continue to the time of action brought, or even to verdict. The plaintiff's doctrine would open a field of litigation without limits; and it would also lead to innumerable frauds, by putting it in the power of the assured to fabricate information precisely fitted to his interest. When the *fact* and not the information is the rule, it is a question easily susceptible of proof, and one which it is impossible to perplex by counterfeit representations, or by rumors, which would perpetually rise up to embarrass the question of information. But above all, the policy is a contract of indemnity against real not imaginary losses; and it is absurd to say that a man has incurred a loss at the time of abandonment, because six weeks before, a state of things existed, which, if it had continued, would have amounted to a loss. The plaintiff must shew its actual continuance.

*Levy* in reply. It is a very erroneous application of a general principle, to consider the decrees and orders of restitution of a *French* court sitting at *Santo Domingo*, under the control and revision of a military chief, as amounting to the performance of what they promise. The courts of that nation generally have been distinguished from those of other nations, by the Supreme Court of the union, who have allowed salvage to the recaptor of a neutral captured by the *French*. Certainly the arm of the executive officer could at any time have intervened to prevent the execution of the order; and many are the cases even in old *France*, where after a compromise with the captors, and an acquittal by the prize-court, the property has been retained by order of the government. With them there is no restitution but actual restitution; and until that time the right of abandonment does not cease. In *Dutilh* v. *Gatliff* no appeal was entered; and where that ceremony does not take place, there

(a) 2 *Burr.* 1198.

is no difference between an acquittal in a court from which an appeal lies, and one in a tribunal of last instance.

TILGHMAN C. J. delivered the opinion of the court.

If we consider the final event in this case, there was in fact but a partial loss. The vessel and cargo were captured by the *French*, and carried into port; they were acquitted by the court of Admiralty judging of matters of prize, in the first instance, the captors appealed, and the decree of acquittal was affirmed by the court of the last resort; in consequence of which, the vessel and cargo were restored, and the voyage on which the insurance was made, was completed. But there was at one period, a total loss by capture, and an abandonment by the plaintiff, at a time, when he supposed that such total loss continued. This abandonment was made after the final acquittal, and order for restitution, but before restitution was actually delivered. The plaintiff's counsel seemed to consider it as a doubtful point, whether it was not sufficient to recover for a total loss, if the abandonment after capture was made at a time when the plaintiff *supposed*, from the information received, that a total loss existed, although in *fact*, it had ceased to exist, by an actual restitution. Considering the decisions which have taken place in the Supreme Court of the *United States*, and the courts of several of the states, and the strong reason on which those decisions are founded, I look upon that point as at rest. It is the *actual* and not the *supposed* state of things at the time of the abandonment, that must govern the case. There is nothing in the nature of the contract, from which it may be inferred that the rights of the parties are to depend upon *supposed losses*. When the assured hears of a loss, if he means to claim for a total loss, he should give speedy notice of his intention to abandon. But whether or not there be at that time a total loss, is a fact to be proved. To say that the total loss exists, because you have been informed so, is bad reasoning. To say that it exists *then*, because it existed *some time before*, is begging the question. Capture and adverse detention, while they continue, are considered in *law* as a total loss; but in their *nature*, they certainly are not so, because there is a chance of recapture or restitution. It ap-

pears to me, that the right of abandonment on these arti-
ficial or technical losses, may be carried so far as to produce
mischief. It tends to divert the contract of insurance from
its original intent, which was the indemnification of the as-
sured in case of loss. It often creates an anxiety in the as-
sured not to pursue the voyage, but to throw it upon the
underwriters, and may lead to improper practices. I am
therefore not for extending it, farther than it has been al-
ready carried. I beg it may be understood, that I have not
the least suspicion of any improper conduct in the plaintiff.
There is nothing in the evidence to warrant it. What I have
said is the result of my general observation on a variety of
cases which have occurred.

The plaintiff's counsel contends, that in the present case,
the total loss existed at the time of the abandonment, be-
cause restitution was not actually made. But the court,
from which there was no appeal, had directed an acquittal,
had made an order for restitution, and the captain of the
vessel, with the order in his pocket, was on the point of
obtaining restitution. The Supreme Court of the *United
States* decided, in *Marshall* v. *The Delaware Insurance
Company*, 4 *Cranch* 202., a case circumstanced precisely
like the present, that the total loss had ceased to exist. But
the plaintiff relies on our own decision in the case of *Du-
tilh* v. *Gatliff.* It will be found however, that between these
two cases, there is a striking difference. In *Dutilh* v. *Gatliff*,
the decree of acquittal was by the *English* court at *Nassau*
in *New Providence*, from which an appeal lay to a supe-
rior court in *England*, and from the state of the case on
which the court decided, it did not appear, whether at the
moment of abandonment, the case was not open to an ap-
peal. I presume it was, because no order for restitution
had been issued, and the vessel remained in the custody of
the captors. While the case remains open to an appeal, and
the property is held by the captor, the peril cannot be said
to be over. But when no appeal lies, and the party is in
possession of an order for restitution, there is a reasonable
presumption that the property will be immediately restored.
It has been urged indeed, that in these times of violence and
confusion, the danger never ceases till restitution is actually

1811.

ADAMS
v.
DELAWARE
INS. Co.

made; that there was no certainty in this case, that the executive power would not arrest the course of justice. I cannot say that there is not, in fact, some weight in this observation. But it would be dangerous ground for this court to take. We have always hitherto considered the courts of all foreign nations as on the same footing, and intitled to the same respect. The Supreme Court of our nation acts on the same principle. There is no reason therefore why we should depart from it in this instance. To say that the loss remained total, at the time of abandonment in this case, would be going farther than this court have ever gone; and for the reasons already assigned, I am against extending the right of abandonment. It is the opinion of the court, that the plaintiff is intitled to recover, only for a partial loss.

BRACKENRIDGE J. I consider this as one of those cases, in which it is not of so much importance what the rule is, as that it be settled. I am satisfied with the rule, as it is laid down by the Chief Justice.

Judgment for a partial loss.